IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DR. FRANCOISE D. FAVI,
          Plaintiff,

v.                                         Civil Action No. 3:19-cv-517

VIRGINIA STATE UNIVERSITY,
et al.,

          Defendants.

## OPINION

Francoise D. Favi, Ph.D., has worked as a researcher for Virginia State University ("VSU")

since 2002.  She has sued VSU, the VSU Board of Visitors, and VSU President Makola M.

Abdullah in his official capacity, alleging that they pay her less than her male colleagues in

violation of the Equal Pay Act ("EPA") and have discriminated against her based on her sex in

violation of Title VII of the Civil Rights Act of 1964.  The defendants have moved to dismiss

Favi's hostile work environment claim for failure to state a claim and to strike Favi's remaining

claims in the second amended complaint.  Because Favi has failed to plead a cognizable hostile

work environment claim and the Court previously dismissed the remaining claims, the Court will

dismiss this case.

## I. FACTS ALLEGED IN THE SECOND AMENDED COMPLAINT

Favi has worked as a post-doctoral research associate and a laboratory and research

specialist for VSU since 2002.  An entomology specialist, she currently serves as a Laboratory and

Research Specialist II in Entomology-Natural Product Research in the Agricultural Research

Station ("ARS").  She conducts research, performs and manages experiments, manages the

laboratory, collects and analyzes data, drafts literature reviews, writes reports, assists and mentors students with research projects, and supervises students and other employees.

Favi worked for Dr. Mark Kraemer, an associate professor of entomology, from 2006 until he retired in 2015. During that time, Dr. Wondi Mersie often assigned Favi work typically reserved for full-time professors, such as developing research techniques, without compensating her for the increased responsibilities. In 2011, Mersie hired Dr. Vitalis Temu, a man, as an associate professor to perform forage research, which required professor-level work. Because Temu could not complete the research, Mersie assigned the work to Favi even though the work fell outside her area of expertise and job description. When Favi expressed her concerns to Mersie, he told her that she must complete the forage research in addition to her entomology research "or he would 'deal with her appropriately.'" (Second Am. Compl. ¶ 21.) VSU did not give Favi additional compensation for the extra work.

In April, 2014, Favi tried to submit a proposal to the United States Department of Agriculture ("USDA") with the help of two non-VSU professors. Mersie would not authorize the proposal or the participation of the other professors. When Favi asked Mersie why he would not authorize her proposal, Mersie told Favi that "she could find other employment if she did not like her current position." (*Id.* ¶ 22.) Favi contends that Mersie's failure to authorize her proposal disadvantaged her professionally and prevented her from obtaining research-based promotions.

In December, 2014, VSU revised Favi's Employee Work Profile ("EWP"), changing her research objectives from entomology to forage and horticulture. Mersie and Temu "threatened and yelled at her repeatedly until she signed" her new EWP. (*Id.* ¶ 23.) They also told Favi that she "would not have a job at any other station unless she signed the revised EWP." (*Id.*)

2

In January, 2015, Mersie held a meeting with Favi, Temu, and Dr. Anwar Hamama, during which they discussed Kraemer's retirement report. The report included research that Favi had done. Mersie told Favi that she could not read the report or claim credit for the work she had produced because she was a laboratory specialist. Instead, Mersie told Temu "that he now owned the research Dr. Favi had done." (*Id.* ¶ 24.)

In February, 2015, Favi expressed interest in filling Kraemer's Associate Professor of Entomology position "and was more than qualified to do so." (*Id.* ¶ 27.) VSU typically promoted laboratory technicians or research specialists when their mentoring professor retired. When VSU posted the position in August, 2015, however, Mersie "changed the requirements to a [Ph.D.] in Horticulture or a related field and [labeled] the position . . . 'G0423 Assistant/Associate Professor (Horticulturist.)" (*Id.* ¶ 28.) Based on the new job description, Favi was ineligible to apply. When Favi asked Mersie why the job description changed, Mersie responded "that it was so that she, Dr. Favi, could not get hired for the position." (*Id.*) In December, 2015, Mersie created a committee to screen applicants for the position. He specified that the position was only open for applicants with a Ph.D. in horticulture, which Favi did not have.

In June, 2015, without explanation, Mersie shut down Favi's research, destroyed her lab, took away her insectarium, threw away her chemicals, and moved her workspace to a cubicle that was too small for her research tools, including her microscope. Favi's insectarium sat idle for years. From June, 2015, to October, 2015, Mersie required Favi to complete tasks typically performed by administrative personnel with less seniority and education.

In July, 2016, Mersie refused to provide Favi with a reliable truck to drive to her research site. Instead, Favi used an unreliable vehicle with faulty brakes. Soon thereafter, the ARS stopped using the unreliable vehicle.

3

In November, 2016, Kraemer's position remained opened. Mersie, however, told Favi that she was "too old" to fill Kraemer's position and that "she would never be hired because the position was open to a nationwide search." (*Id.* ¶ 31.) No one has filled Kraemer's role.

That same month, Mersie emailed to the entire staff other faculty members' and researchers' written abstracts but left out Favi's abstracts. Favi asserts that this disadvantaged her professionally because "professionals in the science industry are only known by their professionally published works." (*Id.* ¶ 32.)

On December 15, 2016, Favi filed a complaint with VSU's Office of Human Resources ("HR"), alleging sex discrimination, age discrimination, hostile work environment, retaliation, and equal pay violations. In February, 2017, Favi also complained to HR about performing the responsibilities of both a researcher and a full-time professor. An HR employee noted that Favi's EWP "reflected the work and qualifications of a full-time professor." (*Id.* ¶ 34.) When HR brought this to Mersie's attention, he did not promote her to Kraemer's vacant position or another professor-level position or compensate her for her additional responsibilities.

Throughout 2017 and 2018, Mersie made Favi work on a farm and drive a dangerous and unreliable truck. He also made her perform "menial physical and subservient farm work not part of her job description" that male employees in her department did not have to perform. (*Id.* ¶ 35.) Favi had two knee surgeries in March, and April, 2017. She returned to work on June 20, 2017, but her doctor restricted her to sedentary work until August 20, 2017. (*Id.*) In July, 2017, Mersie "required Dr. Favi to take charge of the Plant Science workforce by monitoring their presence at Randolph farm." (*Id.*) This work interfered with her recovery from surgery and went against her work restrictions.

4

In January, 2017, when Mersie tried to get rid of Favi's still-operable insectarium, Favi objected. Mersie told Favi that he would "look into it" but did not say that VSU would keep it or that Favi could use it. (*Id.* ¶ 37.) She asked him again in January, 2018, about using the insectarium because her new EWP—which enabled her to conduct insect research—permitted her to get insects from other universities. Mersie told Favi that the insectarium was "to be shared by all who have legitimate needs." (*Id.* ¶ 38.) Without insectarium access, Favi had to obtain insects that she could raise at room temperature. This interfered with her ability to perform her research and receive credit for her work. Further, rather than support Favi, Mersie allowed Dr. Youssef, a male faculty member, to grow mushrooms in the insectarium even though Dr. Youssef had an incubator, a more appropriate place to grow mushrooms.

Between May, 2017, and August, 2017, Favi sought permission to present her research at an Entomological Society of America meeting scheduled for November, 2017. Although Mersie had granted immediate permission to male employees, he told Favi that she needed to be part of an approved project and get permission to participate from her immediate supervisor, Ron Bowen. Bowen gave his permission.

On September 6, 2017, Favi's attorney sent a demand letter to VSU. VSU did not take corrective action.

In June, 2018, after Bowen retired, Mersie made Dr. Guo-Liang Jiang Favi's temporary supervisor. Jiang required Favi to check the fences on the farm, ensure that weeds were removed and cages cleared, oversee hourly workers maintaining the soybean plants, and lift heavy soybean seed bags. These duties were not in Favi's job description. In August, 2018, Jiang made Favi spray pesticides for male faculty members. Favi objected because she did not have a commercial

applicator certification, so she could not legally spray the pesticides. Instead of spraying the pesticides, Mersie told Favi that she needed to do plant research for the male faculty members.

To date, Favi remains a Laboratory and Research Specialist II despite having all the job duties of a full-time professor. She makes less than her male colleagues and has an inferior job title. Further, from 2017 to 2019, the VSU College of Agriculture website showed that Favi worked in plant and soil science rather than as an entomologist studying insects. Favi also "had to fight with Human Resources to get her EWP changed" from plant or forage research to insect research. (*Id.* ¶ 43.)

After exhausting her administrative remedies, Favi filed this action. Her amended complaint[1] alleged three counts: discrimination, harassment, and retaliation in violation of Title VII (Count I); a violation of the Equal Pay Act ("EPA") (Count Two); and a violation of the Age Discrimination in Employment Act ("ADEA") (Count Three). On April 8, 2020, the Court granted VSU's first motion to dismiss but granted Favi leave to amend her complaint only as to her hostile work environment claim.[2] Favi's second amended complaint alleges that she suffered discrimination, harassment, and retaliation in violation of Title VII (Count One); and a violation of the EPA (Count Two). VSU has moved to dismiss the hostile work environment claim for failure to state a claim and to strike all other claims based on the Court's April 8, 2020 ruling.

---

[1] Favi amended her complaint once before the defendants moved to dismiss.

[2] In its April 8, 2020 ruling, the Court inadvertently transposed the Counts of the ADEA and EPA claims. For the sake of clarity, and for the reasons set forth in its April 8, 2020 Opinion, the Court will modify its prior ruling as follows: The Court will dismiss Count Two (the EPA claim) of the amended complaint with prejudice for failure to state a claim. The Court will dismiss Count Three (the ADEA claim) of the amended complaint without prejudice for lack of subject matter jurisdiction. (*See* Dk. No. 20, at 1 n.1; Dk. No. 21.)

## II. **DISCUSSION**

### A. *Motion to Strike*

On April 8, 2020, the Court granted the defendants' motion to dismiss the amended complaint. Specifically, the Court dismissed Favi's ADEA claim without prejudice for lack of subject matter jurisdiction and her EPA claim with prejudice for failure to state a claim. The Court also dismissed her Title VII claims—which alleged disparate treatment, failure to promote, hostile work environment, and retaliation—as time barred. Nevertheless, the Court granted Favi leave only to amend her hostile work environment claim.

In her second amended complaint, Favi asserts that VSU has violated the EPA and has engaged in a "pattern and practice of discrimination, harassment, and retaliation in violation of Title VII." (Second Am. Compl., at 14.) VSU moves to strike Favi's EPA claim in its entirety and Favi's Title VII claim to the extent that it alleges disparate treatment, retaliation, and failure to promote. *See* Fed. R. Civ. P. 12(f). Because the Court granted Favi leave only to amend her hostile work environment claim and dismissed the remaining claims, the Court will grant VSU's motion to strike all other claims.

### B. *Motion to Dismiss*[3]

The defendants have moved to dismiss Favi's hostile work environment claim under Rule 12(b)(6). To state a hostile work environment claim based on gender discrimination, the plaintiff

---

[3] The defendants have moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). A Rule 12(b)(6) motion gauges the sufficiency of a complaint without resolving any factual discrepancies or testing the merits of the claims. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

7

must plead facts "show[ing] that there is (1) unwelcome conduct; (2) that is based on the plaintiff's sex . . . ; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011) (quotations omitted). The defendants argue that Favi's claim fails at the second, third, and fourth prongs.

In its April 8, 2020 Opinion, the Court explained that Favi had not sufficiently alleged that that the defendants discriminated against her based on her sex. In her second amended complaint, Favi alleges that Mersie required Favi to complete worse assignments than her male colleagues and unnecessarily delayed granting her permission to present her research even though he immediately granted permission to her male colleagues. Those new facts "nudge[ ] [her] claim[ ] across the line from conceivable to plausible" with regard to the second prong. *Twombly*, 550 U.S. at 570. Thus, Favi adequately alleges that Mersie acted based on her gender.

Even so, Favi's allegations fail to meet the severe or pervasive standard. Favi's complaint "must clear a high bar" to meet that standard. *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). That standard has a subjective and an objective component. *See EEOC v. Sunbelt Rentals, Inc.* 521 F.3d 306, 315 (4th Cir. 2008). First, a plaintiff must find the alleged conduct offensive. *Id.* Second, a plaintiff must show that a reasonable person in her position "would have found the environment objectively hostile or abusive." *Id.*

To determine if conduct qualifies as severe or pervasive, courts consider the totality of the circumstances, including (1) frequency; (2) severity; (3) whether the conduct was physically threatening or humiliating, or merely an offensive utterance; and (4) whether the conduct unreasonably interfered with the plaintiff's work performance. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001). "Workplaces are not always harmonious locales, and even incidents

8

that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard." *Sunbelt Rentals, Inc.*, 521 F.3d at 315. "[C]omplaints premised on nothing more than rude treatment by [coworkers], callous behavior by [one's] superiors, or a routine difference of opinion and personality conflict with [one's] supervisor are not actionable." *Id.* (internal citations and quotations omitted).

Favi does not plead facts indicating that any unwelcome conduct qualified as severe or pervasive enough to meet the standard. Favi's allegations show that Mersie asked her to perform duties outside of her EWP, expected her to complete physically taxing work, and made decisions that made Favi's research more difficult. *Cf. Young v. Giant Food Stores, LLC*, 108 F. Supp. 3d 301, 312 (D. Md. 2015) (concluding that general allegations that a supervisor showed disdain and disrespect to the plaintiff, yelled at the plaintiff, refused to provide the plaintiff with resources, and ignored the plaintiffs' calls and messages did not meet the severe and pervasive standard). But Title VII prohibits "extreme" conduct that "amount[s] to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). It does not create "a 'general civility code,'" nor does it impose liability for "the ordinary tribulations of the workplace." *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).[4] Because the conduct alleged in Favi's second amended complaint does not qualify as severe or pervasive, the Court will dismiss her hostile work environment claim with prejudice.[5]

---

[4] *See also Spida v. BAE Sys Info. Sols., Inc.*, No. 1:16-cv-979, 2016 WL 7234088, at *6 (E.D. Va. Dec. 13, 2016) ("Disagreements with management decisions . . . do not rise to the level of a hostile work environment."); *Hemphill v. ARAMARK Corp.*, No. 1:12-cv-1584, 2014 WL 1248296, at *14 (D. Md. Mar. 25, 2014), *aff'd sub nom.* 582 F. App'x 151 (4th Cir. 2014) (per curiam) (concluding that "incidents . . . amount[ing] to nothing more than a series of ordinary personnel decisions" do not create a hostile work environment).

[5] To the extent that Favi argues that the defendants have tried "to constructively discharge her," that argument has no merit. (Second Am. Compl. ¶ 45.) First, Favi has not resigned from

### III. CONCLUSION

Because Favi has failed to plead facts showing that Mersie's conduct qualifies as severe and pervasive and the Court previously dismissed Favi's other claims, the Court will grant the defendants' motion to strike and to dismiss.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 15 July 2020
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

---

her position. *See Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985) ("A constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job." (quotations and citations omitted)). Second, because she has not adequately alleged a hostile work environment claim, a constructive discharge claim would also fail. *See Nnadozie v. Genesis HealthCare Corp.*, 730 F. App'x 151, 162 (4th Cir. 2018) ("The 'intolerability' standard governing constructive discharge claims is more stringent than the 'severe [or] pervasive' standard for hostile work environment claims.").